IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | No. 03 CR 779 - 02 |
| | ) | |
| JACK L. HARGROVE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The government has presented alternate preliminary orders of forfeiture. It argues that the court should approve the order that includes forfeitures of defendant Jack L. Hargrove's interest in an employee pension plan. The defendant disagrees, and so do we.

The government contends that the substitute asset provision explicitly authorizes the government to forfeit "any" property of the defendant, 21 U.S.C. §853(p)(2), and the interest in the pension plan is property of the defendant. It is right about that, but that does not resolve the issue. Pension plan benefits are protected against assignment or alienation by 29 U.S.C. §1056(d)(1). The Supreme Court, in <u>Guidry v. Sheet Metal Workers National Pension Fund</u>, 493 U.S.365 (1990), determined that the anti-alienation provision protected the pension benefits of a union official who had embezzled union funds; the union could not impose a constructive trust on those benefits so as to be repaid. The government points out that <u>Guidry</u> was a civil case having to do with whether a civil plaintiff may obtain a constructive trust against one who has committed a tort, and, again, it is correct (although it is perhaps somewhat disingenuous in this context to describe a criminal embezzlement as simply a tort).

A careful reading of <u>Guidry</u>, however, leads to the conclusion that the protection is

broad indeed. The forfeiture provision is general; it does not explicitly deal with pension funds. In those circumstances the Supreme Court has ruled out the judicial creation of exceptions to the ERISA anti-alienation provision:

> ... Were we to accept respondents' position, ERISA's anti-alienation provision would be inapplicable whenever a judgment creditor relied on the remedial provisions of a federal statute. Such an approach would eviscerate the protection of §206(d), and we decline to adopt so broad a reading of §514(d)
>
> It is an elementary tenet of statutory construction that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one ...." Morton v. Mancari, 417 U.S. 535, 550-551 (1974).
>
> * * * *
>
> Nor do we think it appropriate to approve any generalized equitable exception – either for employee malfeasance or for criminal misconduct – to ERISA's prohibition on the assignment or alienation of pension benefits. Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.
>
> * * * *
>
> ... A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticability of defining such a standard reinforces our conclusion that the identification of any exception should be left to Congress.
>
> Understandably, there may be a natural distaste for the result we reach here. The statute, however, is clear. In addition, as has been noted above, the malefactor often is not the only beneficiary of the pension.

*Id.* at 375-377.

                                              JAMES B. MORAN
                                        Senior Judge, U. S. District Court

June 26, 2006.